## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC., BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING, MCGRAW HILL LLC, and PEARSON EDUCATION, INC., | |
| Plaintiffs, | **Civil Action No.** |
| v. | **COMPLAINT FOR:** |
| DOES 1 – 50 d/b/a Library Genesis, bookwarrior, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks, libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com, | **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*)** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiffs Cengage Learning, Inc., Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, McGraw Hill LLC, and Pearson Education, Inc. (collectively, "Plaintiffs"), for their Complaint against Defendants Does 1 – 50 d/b/a Library Genesis, bookwarrior, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com (collectively, "Defendants"), allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters.

## NATURE OF THE CASE

1.      This case arises out of extensive violations of federal copyright law.  Defendants operate one of the largest, most notorious, and far-reaching infringement operations in the world. "Library Genesis," or "Libgen" for short, is a group of pirate websites through which a vast array of written material is illegally copied and distributed online without any authorization, and with no remuneration to copyright holders.  Operating as an illegal "shadow library," Libgen enables users to download, for free, fiction and non-fiction books (among other types of works), including educational textbooks, instead of buying or renting lawful copies or checking them out from a legitimate library.  Defendants have absolutely no legal justification for what they do and operate in complete and knowing defiance of the rule of law.

2.      Plaintiffs are leading educational publishers committed to creating and publishing copyrighted works that advance learning.  Each year, Plaintiffs publish tens of thousands of academic works, including higher education textbooks, which serve as the basis for thousands of courses in universities and colleges across the United States and are among the most popular and widely used titles in their fields.

3.      Defendants are unknown individuals and/or entities who own, operate, and/or

control Libgen.  Defendants intentionally hide their identities to avoid the obvious consequences of their actions, including by using pseudonyms, such as "bookwarrior" and "librarian," relying on proxy services that specifically conceal website operators' identifying information, and failing to provide any names or business addresses as contact information.

4.      Recognizing that their websites are vulnerable to being shut down for their illegal activity, Defendants operate Libgen at multiple and ever-changing domains, including, without limitation, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com ("Libgen Sites" or "Sites").

5.      In addition to using multiple domains, Defendants have built in multiple redundancies to protect their ability to illegally distribute copyrighted works by offering multiple methods of downloading from the Sites.  For instance, users can download infringing files from Libgen directly or through Interplanetary File Sharing ("IPFS") gateways that purport to facilitate faster and safer downloads and are operated by companies based in the United States.

6.      The scale of Defendants' infringement is staggering.  Libgen maintains an enormous collection of infringing works that anyone with an internet connection can access. This collection consists of *over 6 million files* that include illegal copies of works from a diverse cross-section of the publishing industry.  For Plaintiffs alone, Libgen has *over 20,000* files published by Plaintiffs – none of which Plaintiffs authorized Defendants to copy or distribute.

7.      While Libgen's claimed objective is the "[c]ollection, systematization and distribution of scientific, technical and educational literature on a free and open basis," this is just a ruse for a massive piracy effort.  In fact, the Sites undermine the very purpose of U.S. copyright law to "promote the progress of science and the useful arts, by securing for limited

times to authors . . . the exclusive right to their respective writings." U.S. Const. art. 1, § 8, cl. 8. As the "shadow library" moniker suggests, the Libgen Sites operate very differently from legitimate libraries. Instead of acquiring works through channels that acknowledge and compensate the efforts of publishers and authors, Defendants simply take what is not theirs and share it widely so others can do the same.

8.     Defendants' infringing activities cause serious financial and creative harm to Plaintiffs, who produce and distribute books on behalf of themselves and their authors, to whom they pay royalties. The Libgen Sites deprive Plaintiffs and their authors of income from their creative works, devalue the textbook market and Plaintiffs' works, and may cause Plaintiffs to cease publishing certain works.

9.     Without Court intervention, Defendants will continue operating the Libgen Sites, causing still further harm to copyright holders, including Plaintiffs. Accordingly, Plaintiffs bring this action for injunctive relief and damages to stop and seek redress for Defendants' knowing and willful copyright infringement.

## **PARTIES**

## **The Plaintiff Publishers**

10.     Plaintiff Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning") is a New York limited liability company with its principal place of business at 120 Broadway, New York, New York 10271.

11.     Plaintiff Cengage Learning, Inc. ("Cengage") is a Delaware corporation, with its principal place of business at 5191 Natorp Boulevard, Mason, Ohio 45050, as well as a long history of doing business in New York.

12.     Plaintiff McGraw Hill LLC ("McGraw Hill") is a Delaware limited liability

company, with its principal place of business at 8787 Orion Place, Columbus, Ohio 43240, as well as offices in New York and a long history of doing business in New York.

13.     Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation, with its principal place of business at 221 River Street, Hoboken, New Jersey 07030 and a long history of doing business in New York.

## The Defendants

14.     Defendants Does 1 – 50 are persons of unknown identity who own, operate, and/or or control Library Genesis, including the Libgen collection of infringing works and the Libgen Sites.

15.     Defendants are believed to reside outside of the United States at unknown foreign locations.

## JURISDICTION AND VENUE

16.     This is an action arising under the Copyright Act, 17 U.S.C. § 101 *et seq*.  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17.     The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), the federal long arm statute.  From unknown foreign locations, Defendants own, operate, and/or control the Sites, which target and are continuously accessible to users in the United States, providing such users with infringing copies of the works of numerous U.S. copyright holders, including Plaintiffs.  Indeed, millions of U.S. users visit the Sites each month, and a significant percentage of all visitors to the Sites are in the United States. Defendants also rely on U.S. companies as intermediaries to operate the Sites, and several of the Sites identify a "copyright agent" that purportedly facilitates a notice-and-takedown procedure

under the Digital Millennium Copyright Act, 17 U.S.C. § 512 (notwithstanding the "agent's" disregard of such notices).  Further, Defendants derive revenue from interstate or international commerce, including through advertisements and donation solicitations.

18.     Alternatively, the Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1) and/or (3).  Defendants have (1) transacted business and/or contracted to supply goods in New York, including distributing infringing works to Plaintiffs and others in New York via the interactive Sites, which are continuously accessible to users in New York, and Plaintiffs' claims arise from those activities, and/or (2) committed tortious acts of infringement causing injury to Plaintiffs in New York.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(c)(3) insofar as Defendants do not reside in the United States and 28 U.S.C. § 1391(b) because Defendants have committed acts of infringement in this District and/or have tortiously injured Plaintiffs in this District.

## FACTUAL ALLEGATIONS

### A.     Plaintiffs' Textbook Businesses and Valuable Copyrights

20.     Plaintiffs are four of the leading educational publishers in the United States. Plaintiffs develop, market, distribute, and sell a wide range of traditional and digital educational content and tools to educators and students.  Plaintiffs' textbooks are widely available for sale, including from Plaintiffs' direct sales channels, such as their own websites, and from third-party distributors and physical and online bookstores.

21.     Plaintiffs work with authors who are experts in their fields to create and publish their valuable and important academic works.  Plaintiffs and their respective authors engage in an ongoing creative process, collaborating closely to select, plan, create, write, edit, organize, and arrange the content within each of their works.  Plaintiffs and their respective authors also

actively review and update the content based on their expertise, research, and analysis, and the needs of the scholastic community.

22.     Plaintiffs invest significant time and monies into publishing their works, including in content creation and in the support, advertisement, marketing, and promotion of their works in the United States.  Plaintiffs have long histories in the publishing industry and have invested decades of effort in building reputations for publishing works of the highest quality.

23.     Plaintiffs own or exclusively control the copyrights in their works or derivative works described in **Exhibit A** hereto, among many others, which are registered with the U.S. Copyright Office ("Authentic Works").  Plaintiffs downloaded infringing copies of the Authentic Works from the Libgen Sites using links to the Libgen server, including sample downloads from a New York IP address.  Plaintiffs also downloaded infringing copies of certain Authentic Works using links from the Sites to the IPFS gateways.  Given the blatantly illegal nature of Defendants' conduct and the Libgen Sites, and the fact that Defendants maintain a collection of over 1.7 million files labelled non-fiction, including many of Plaintiffs' works beyond those that Plaintiffs downloaded, Exhibit A is a non-exhaustive, representative list that may be updated as this case proceeds.

24.     Plaintiffs have not authorized Defendants to copy or distribute any of their works.

B.     <u>The Libgen Sites and Defendants' Willful Infringement</u>

25.     Defendants have copied thousands, if not tens of thousands or more, of Plaintiffs' works for inclusion in their massive, illegal collection.  Defendants have further distributed an untold number of infringing digital copies of Plaintiffs' works to the public through the Libgen Sites.

26.      As shown in the screenshot below (from libgen.rs), Defendants provide a search function that allows users to quickly and easily search their entire collection of infringing works, using, for example, title, author, publisher, or International Standard Book Number ("ISBN") fields.



27.      In addition to the search feature, the screenshot above shows the Sites include features that allow Defendants to grow and strengthen their illegal operation, including links to: (1) "volunteer" opportunities to "[g]et involved to help the project!"; (2) tips for "effective catalog searching"; (3) recommendations to "[u]pdate your bookmarks!" with "[c]urrent alias domains"; (4) a forum in which users can discuss Libgen-related topics with other users and Defendants; (5) the "Libgen Desktop application"; and (6) a page that allows users to upload content, which Defendants then distribute.

28.      The Libgen Sites include individual pages for each of the infringing works that Defendants distribute.  As shown in the examples below, these individual pages contain (1) unauthorized images of the book; and (2) links to download the infringing works in different ways, including directly from Libgen server(s), through IPFS networks, or through other peer-to-peer networks, such as Gnutella, eDonkey (displayed as "Ed2k"), and Direct Connect

(displayed as "DC++").  The first screenshot below is of the page on libgen.rs for James Morris'

*Biology: How Life Works,* 2nd edition, published by Macmillan Learning.   The second

screenshot below is of the page on libgen.is for William Joseph, Mark Kesselman, and Joel

Krieger's *Introduction to Comparative Politics: Political Challenges and Changing Agendas,*

8th edition, published by Cengage.





29.     The current IPFS gateway companies include Cloudflare, Protocol Labs (which operates IPFS.io), and Pinata, which are all based in the United States.  When a user clicks on a link to download an infringing work via the IPFS network, their browser is directed to a gateway operator URL that acts as a relay point between the user and the IPFS network, supposedly enabling a "*FASTER*" download.   For example, in the screenshot below, clicking the "Cloudflare" button for *Biology: How Life Works* takes users to the cloudflare-ipfs.com URL displayed at the bottom of the screenshot and an infringing copy of the work.



30.     Similarly, in the example screenshot below, clicking the "Cloudflare" button for *Introduction to Comparative Politics* takes users to the cloudflare-ipfs.com URL at the bottom of the screenshot and an infringing copy of the work.



31.   In addition to the IPFS gateway companies referenced above, Defendants rely on other intermediaries to conduct their unlawful operations, including some U.S. companies such as NameCheap for domain registration services, Cloudflare for proxy services, and Google for search engine services.   As shown in the screenshot below, Google also provides users with a "knowledge panel" that identifies the Libgen domains in a separate text box on the search page and describes Libgen as a "site [that] enables free access to content that is otherwise paywalled or not digitized elsewhere."



32.    The Libgen Sites receive a significant number of visitors from users located in the United States.  For instance, according to similarweb.com, from March through May 2023 alone, the Sites (collectively) had an average of over 9 million visitors per month from the United States.

33.    Defendants target advertisements at users through several Libgen Sites, including U.S. users, which provide a financial benefit to Defendants.  The advertisements are in English and are for various U.S. products, such as browser extensions and online games.  Some advertisements also appear to be phishing attempts, which can result in users downloading a virus or other malicious program onto their computers.

34.    Several Libgen Sites solicit "donations" from users for Defendants' financial benefit.  These solicitations are in English and seek payments only in Bitcoin or Moreno – two cryptocurrencies.   One Libgen Site reports that it has raised $182,540 from donations since January 1, 2023.

35.    Plaintiffs downloaded infringing copies of Plaintiffs' Authentic Works from the

Libgen Sites as set forth in Exhibit A. Many of these infringing files include the copyright information page contained in the Authentic Works. While these infringing files copy the content in Plaintiffs' Authentic Works, they are generally PDF copies that are different from Plaintiffs' legitimate digital textbooks, including because they lack Digital Rights Management or other digital security to help prevent their further downstream dissemination.

36.     Defendants are well aware of the illegal nature of the Libgen Sites. Defendants operate Libgen with the full knowledge that the Sites run afoul of U.S. copyright law and that they have not been granted any license to copy or distribute digital copies of Plaintiffs' works. The screenshot below is from a Libgen discussion forum accessible from several of the Sites' homepages. It shows a user identified as Library Genesis staff with the username "Librarian" explaining "the threat posed by the U.S. authorities to pirate/shadow libraries" like Libgen. The post includes links to various internet pages describing different aspects of copyright law, including an explanation of Title 17 of the United States Code on the U.S. Copyright Office's website and descriptions of the elements of criminal copyright infringement (including the third element, willfulness) and the penalties for criminal copyright infringement on the U.S. Department of Justice's website. Defendants have also ignored and failed to act upon thousands of notices of infringement informing them of specific instances of infringement of Plaintiffs' works on the Sites.



37.     Defendants rely on the anonymity of the internet and their overseas locations to hide their names and addresses and frustrate enforcement efforts against them.  The Libgen Sites do not provide a name or business address on a "contact us" page or otherwise, as would be expected from a legitimate website.  Defendants also conceal their identities when registering domain names, including by using registrars that keep registrant information private and/or registrant proxy services.

38.     In *Elsevier Inc. et al. v. The Library Genesis Project d/b/a Libgen.org et al.*, No. 15-cv-4282 (RWS), Elsevier Inc. ("Elsevier") brought an action in this District against Libgen and another shadow library for, *inter alia*, copyright infringement.  No defendants appeared on behalf of Libgen, and the court entered a judgment finding defendants liable for willful copyright

14

infringement, permanently enjoining defendants, and ordering the top-level domain registries to transfer the Libgen domains to Elsevier.  Defendants are still operating Libgen today at new domains, continuing their blatant infringement.

39.     In addition, courts in several countries, including Belgium, France, Germany, Greece, Italy, and the United Kingdom, have ordered internet service providers to block access to Libgen Sites as a result of infringement actions.

### C.     Defendants Cause Substantial Injury to Plaintiffs

40.     Defendants have caused Plaintiffs substantial harm.  Defendants copy and distribute tens of thousands of infringing copies of Plaintiffs' works.  Online piracy of Plaintiffs' academic works is rampant, Plaintiffs have to invest substantial resources to combat it, and Defendants are among the worst offenders.

41.     Defendants compete directly with Plaintiffs by distributing infringing copies of their works for free, displacing legitimate sales.  When a consumer obtains Plaintiffs' works from the Libgen Sites instead of through legitimate channels, no remuneration is provided to Plaintiffs or their authors for the substantial investments they have made to create and publish the works.  Moreover, through social media and from their peers, students are bombarded with messages to use the Libgen Sites instead of paying for legal copies of textbooks, especially during the back-to-school season when most students purchase their textbooks.  And all too many use Libgen, perhaps not realizing the illegal nature of the Sites.

42.     Defendants' unlawful conduct also devalues the textbook market by providing copies of digital textbooks for free.  When consumers can acquire textbooks for free, they are less likely to be willing to pay fair value for them and more likely to be unappreciative of what it takes to produce them.  Defendants' PDF copies of Plaintiffs' works are also often inferior in

quality to Plaintiffs' authentic digital textbooks, such as by not being readily searchable.

43.     A substantial decline in revenue from sales of Plaintiffs' copyrighted works could cause Plaintiffs to cease publishing one or more deserving works.  This would adversely impact the creation of new works, scholarly endeavors, and the availability of educational content in many disciplines.

## CLAIM FOR RELIEF

### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

44.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in the foregoing paragraphs 1 – 43 as though set forth fully herein.

45.     Plaintiffs' Authentic Works listed in Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act of 1976, as amended, and they are protected by registrations duly issued by the U.S. Copyright Office to the Publishers or their predecessors or licensors.  Each registration is either within three months of publication or pre-dates commencement of the infringement complained of herein.  At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in such works, which have never been assigned, licensed, or otherwise transferred to Defendants.

46.     Defendants, without the permission of Plaintiffs, and with knowledge of Plaintiffs' copyrights, have reproduced the Authentic Works and/or distributed to the public unauthorized copies of the Authentic Works.  Such conduct constitutes infringement of Plaintiffs' exclusive rights under copyright pursuant to 17 U.S.C. § 501 in violation of 17 U.S.C. §§ 106(1) and 106(3).

47.     The infringement of Plaintiffs' rights in each of their respective Authentic Works

constitutes a separate and distinct act of infringement.

48.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had knowledge that their conduct was unlawful and in violation of Plaintiffs' copyrights.  Defendants acted intentionally and in reckless disregard of Plaintiffs' copyrights.

49.     As a result of Defendants' unlawful and deliberate conduct, as set forth above, Plaintiffs have been, and will continue to be, damaged.

50.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement, as well as other appropriate equitable relief, as specified below.

## **PRAYER FOR RELIEF**

By reason of the facts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

51.     Judgment on the claims set forth above, including that Defendants' infringement of Plaintiffs' copyrights in the Authentic Works listed in Exhibit A, including as Exhibit A may be amended, is intentional and willful.

52.     An order requiring Defendants to pay Plaintiffs damages as a consequence of their unlawful acts described above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

53.     An order enjoining Defendants and other appropriate persons or entities under 17 U.S.C. § 502 and Federal Rule of Civil Procedure 65(d) from further infringing and facilitating

infringement upon Plaintiffs' respective copyrights;

54.     An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including from Defendants' distributions of copies of Plaintiffs' works and advertisements and donations obtained on and through the Sites;

55.     An order requiring Defendants to deliver up for destruction all infringing copies of Plaintiffs' works or parts thereof, and all devices by means of which such copies have been created, distributed, or stored, pursuant to 17 U.S.C. § 503;

56.     An order requiring the transfer of the Libgen domain names to Plaintiffs or, at Plaintiffs' election, canceling or deleting the Libgen domain names;

57.     Prejudgment and post-judgment interest at the applicable rate;

58.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

59.     Such other and further relief the Court deems proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs hereby request a trial by jury.


DATED:  September 14, 2023                Respectfully submitted,

                                By:   */s/ Matthew J. Oppenheim*
                                      Matthew J. Oppenheim

                                      Matthew J. Oppenheim
                                      Kevin P. Lindsey (*pro hac vice* motion to be filed)

                                      OPPENHEIM + ZEBRAK, LLP
                                      4530 Wisconsin Avenue NW, Fifth Floor
                                      Washington, DC 20016
                                      Tel:  (202) 480-2999
                                      Fax:  (866) 766-1678
                                      matt@oandzlaw.com
                                      klindsey@oandzlaw.com

                                      *Attorneys for Plaintiffs*