## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC., BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING, MCGRAW HILL LLC, and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1 – 50 d/b/a Library Genesis, bookwarrior, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks, libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com, <br><br> Defendants. | **Civil Action No.  23-cv-08136-CM** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF A DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND POST-JUDGMENT RELIEF ORDER**</u>

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

   A.   Plaintiffs' Businesses and Copyrights ................................................................ 2

   B.   Defendants' Willful Infringement ....................................................................... 3

   C.   Defendants Cause Substantial Injury to Plaintiffs ............................................. 7

   D.   Procedural History .............................................................................................. 7

ARGUMENT ...................................................................................................................... 8

   A.   The Court Should Enter Judgment for Plaintiffs Based on the Well-Pleaded Allegations in the Complaint ............................................................................................................. 8

   B.   The Court Has Personal Jurisdiction Over Defendants. ..................................... 8

   C.   Defendants Are Liable for Willful Copyright Infringement. ........................... 11

   D.   The Court Should Award Plaintiffs Maximum Statutory Damages. ................ 13

   E.   An Evidentiary Hearing to Determine Statutory Damages Is Not Required. ... 18

   F.   The Court Should Issue the Proposed Permanent Injunction. .......................... 18

   G.   The Libgen Domain Names Should Be Turned Over to Plaintiffs. .................. 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Am. Chem. Society v. John Does 1-99*,
No. 17-cv-726-LMB-JFA (March 28, 2018 E.D. Va.) ..................................................... 23, 25

*Am. Chem. Society v. John Does 1-99*,
No. 17-cv-726-LMB-JFA. (E.D. Va. November 3, 2017)..................................................... 14

*Arista Recs., LLC v. Tkach*,
122 F. Supp. 3d 32 (S.D.N.Y. 2015) ..................................................................................... 22

*Bass v. Diversity Inc. Media*,
No. 19-CV-2261- AJN, 2020 WL 2765093 (S.D.N.Y. May 28, 2020)................................. 12

*Bedford, Freeman & Worth Publishing Group, LLC v. English*,
21-cv-6691-ER (S.D.N.Y. November 10, 2022) .................................................. 14, 19, 23, 25

*Bedford, Freeman & Worth Publishing Group, LLC v. Nguyen*,
19-cv-10524-LAK, 2021 WL 4803625 (S.D.N.Y. October 14, 2021).................. 15, 19, 21, 23

*Bersoum v. Aboteat*,
568 F. Supp. 3d 443 (S.D.N.Y. 2021) ................................................................................... 10

*Bigio v. Coca-Cola Co.*,
675 F.3d 163 (2d Cir. 2012)................................................................................................... 22

*Branch v. Ogilvy & Mather, Inc.*,
772 F. Supp. 1359 (S.D.N.Y. 1991) ...................................................................................... 12

*Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*,
655 F. Supp. 2d 177 (E.D.N.Y. 2009) ................................................................................... 13

*Broad. Music, Inc. v. Buffalo Wing Joint & Pub, LLC*,
431 F. Supp. 3d 147 (W.D.N.Y. 2019) .................................................................................. 20

*Bryant v. Media Right Prods., Inc.*,
603 F.3d 135 (2d Cir. 2010).................................................................................................. 17

*Cablevision Sys. New York City Corp. v. Leath*,
No. 01 CIV. 9515 (LTS), 2002 WL 1751343 (S.D.N.Y. July 26, 2002)................................. 8

*Cengage Learning, Inc. v. Nguyen*,
No. 120 Civ. 00769 (JGK)(SDA), 2021 WL 9908537 (S.D.N.Y. June 1, 2021) .................... 24

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ..................................................................................... 11

*Coach, Inc. v. Melendez*,
No. 10 CIV. 6178 BSJ HBP, 2011 WL 4542971(S.D.N.Y. Sept. 2, 2011)............................ 18

*D.H. Blair & Co. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)..................................................................................................... 11

*Dardana Ltd. v. Yuganskneftegaz,*
    317 F.3d 202 (2d Cir. 2003) .......................................................................... 9

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ..................................................................................... 19

*Elsevier Inc. v. Quattainah,*
    No. 20-cv-8438-LLS (S.D.N.Y. June 28, 2022) ....................................... 14, 19, 22

*Elsevier Inc. v. Sci-Hub,*
    No. 15-CV-4282 (RWS), 2017 WL 3868800 (S.D.N.Y. June 21, 2017) ......... 6, 12, 14, 23

*Elsevier Inc. v. Siew Yee Chew,*
    No. 17CIV6225JGKGWG, 2019 WL 74606  (S.D.N.Y. Jan. 2, 2019) .................. 16

*Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.,*
    No. 06 CIV. 7827 HB (GWG), 2008 WL 4449533 (S.D.N.Y. Oct. 2, 2008). ........ 15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ..................................................................................... 11

*Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.,*
    No. 16-cv-5883 (JGK) (RWL), 2018 WL 3639929 (S.D.N.Y. July 10, 2018) ......... 9, 10

*FTC v. 1263523 Ontario, Inc.,*
    205 F. Supp. 2d 218 (S.D.N.Y. 2002) ............................................................ 8

*Google LLC v. Starovikov,*
    No. 21CV10260 (DLC), 2022 WL 4592899 (S.D.N.Y. Sept. 30, 2022) ................. 8

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,*
    973 F.2d 155 (2d Cir.1992) ........................................................................... 8

*Gucci Am., Inc. v. Weixing Li,*
    135 F. Supp. 3d 87 (S.D.N.Y. 2015) .............................................................. 10

*Havens v. James,*
    76 F.4th 103 (2d Cir. 2023) .......................................................................... 22

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,*
    826 F. Supp. 2d 619 (S.D.N.Y. 2011) ...................................................... 19, 20, 21

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
    327 F. Supp. 3d 606 (S.D.N.Y. 2018) ......................................................... 11, 13

*Lane Crawford LLC v. Kelex Trading (CA) Inc.,*
    No. 12 CIV. 9190 GBD AJP, 2013 WL 6481354 (S.D.N.Y. Dec. 3, 2013) ............ 16

*Lauratex Textile Corp. v. Allton Knitting Mills,*
    519 F. Supp. 730, 733 (S.D.N.Y. 1981) ......................................................... 13

*Lottie Joplin Thomas Tr. v. Crown Publishers, Inc.,*
    592 F.2d 651 (2d Cir. 1978) .......................................................................... 13

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.,*
    648 F. Supp. 2d 501 (S.D.N.Y. 2009) ............................................................ 12

*Mattel, Inc. v. www.happy-toys.shop*,
 No. 21-CV-06650 (VSB), 2022 WL 814310 (S.D.N.Y. Mar. 17, 2022) ................................. 25

*McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*,
 323 F. Supp. 3d 488 (S.D.N.Y. 2018) .................................................................................... 23

*Microsoft Corp. v. Atek 3000 Computer Inc.*,
 No. 06CV6403(SLT)(SMG), 2008 WL 2884761 (E.D.N.Y. July 23, 2008) ......................... 21

*Moncler S.P.A. v. John Does 1-16*,
 19-cv-8848-PGG (S.D.N.Y. July 30, 2020) ............................................................................ 8

*Next Invs., LLC v. Bank of China*,
 12 F.4th 119 (2d Cir. 2021) ................................................................................................... 22

*Nike, Inc. v. Wu*,
 No. 13 Civ. 8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020) .................................... 22

*Paramount Pictures Corp. v. Does*,
 No. 15 Civ. 5819, 2015 WL 10013786 (S.D.N.Y. Nov. 24, 2015) ......................................... 23

*Pearson Educ., Inc. v. Vergara*,
 No. 09 Civ. 6832, 2010 WL 3744033 (JGK)(KNF) (S.D.N.Y. Sept. 27, 2010) .................... 20

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
 905 F.3d 1 (1st Cir. 2018) ....................................................................................................... 9

*Przewozman v. Charity*,
 No. 20-cv-6088 (NGG) (TAM), 2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023) ...................... 9

*Rolex Watch U.S.A., Inc. v. Brown*,
 No. 01 CIV.9155 JGK AJP, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002) ................... 18

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*,
 97 F. Supp. 3d 536 (S.D.N.Y. 2015) ..................................................................................... 18

*Salinger v. Colting*,
 607 F.3d 68 (2d Cir. 2010) .................................................................................................... 19

*Sara Lee Corp. v. Bags of New York, Inc.*,
 36 F. Supp. 2d 161 (S.D.N.Y. 1999). ..................................................................................... 13

*Schwartz-Liebman Textiles, a Div. of Cranstron Print Works Co. v. Last Exit Corp.*,
 815 F. Supp. 106 (S.D.N.Y. 1992) ............................................................................. 13, 16, 17

*Tabak v. Lifedaily, LLC*,
 No. 21 CV 04291 (LLS), 2021 WL 5235203 (S.D.N.Y. Nov. 9, 2021) ................................. 18

*TigerCandy Arts, Inc. v. Blairson Corp.*,
 No. 09 Civ. 6215(GBD) (FM), 2012 WL 760168 (S.D.N.Y. Feb. 23, 2012) ......................... 19

*Tory Burch LLC v. Yong Sheng Int'l Trade Co., Ltd*,
 No. CV10CIV9336DAB, 2011 WL 13042618 (S.D.N.Y. May 13, 2011) ............................... 25

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*,
 109 F.3d 105 (2d Cir. 1997) ................................................................................................... 8

*TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*,
    No. 16-CV-1489 (DLI)(PK), 2018 WL 7076022 (E.D.N.Y. Mar. 9, 2018) ........................... 23

*Union of Orthodox Jewish Congregation of Am. V. Royal Food Distributors Liab. Co.*,
    665 F. Supp. 2d 434 (S.D.N.Y. 2009) .................................................................................. 15

*Warner Bros. Entm't Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008) .................................................................................. 19

*Warner Bros. Entm't, Inc. v Carsagno*,
    No. 06 cv 2676NG (RLM), 2007 WL 1655666 (E.D.N.Y. June 4, 2007) ............................ 21

## Statutes

17 U.S.C. § 101 ............................................................................................................................ 1

17 U.S.C. § 512 .......................................................................................................................... 10

17 U.S.C. § 501(a)(b) ................................................................................................................. 11

17 U.S.C. § 106(1) ...................................................................................................................... 12

17 U.S.C. § 410(c) ...................................................................................................................... 12

17 U.S.C. § 504 ..................................................................................................................... 12, 13

17 U.S.C. § 412(2) ...................................................................................................................... 14

17 U.S.C. § 502 ..................................................................................................................... 18, 23

U.S. Const. art 1 § 8, cl. 8. ......................................................................................................... 21

## Rules

Fed. R. Civ. P. 55 ..................................................................................................................... 7, 8

Fed. R. Civ. P. 4(k)(2) .................................................................................................................. 9

Fed. R. Civ. P. 8 ........................................................................................................................... 8

N.Y. C.P.L.R. § 302(a)(1) .......................................................................................................... 11

Fed. R. Civ. P. 65(d) ............................................................................................................. 22, 23

Plaintiffs Cengage Learning, Inc., Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, McGraw Hill LLC, and Pearson Education, Inc. (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Entry of a Default Judgment, Permanent Injunction, and Post-Judgment Relief Order against Defendants Does 1 – 50 d/b/a Library Genesis, bookwarrior, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com, who are further identified through the additional domains set forth in Appendix A to Plaintiffs' Proposed Order (collectively, "Defendants").  With no license or other form of authorization, Defendants unlawfully reproduce and distribute digital copies of Plaintiffs' copyrighted works on a massive scale in willful violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

## **INTRODUCTION**

Plaintiffs are leading higher education publishers committed to creating and publishing copyrighted works that advance learning.  Defendants own, operate, and/or control one of the most notorious and far-reaching infringement operations in the world—the pirate "shadow library" known as "Library Genesis," or "Libgen" for short.  Libgen consists of a group of websites through which a vast array of written material is stolen and shared widely online with no remuneration to copyright holders.  This includes thousands, if not tens of thousands, of Plaintiffs' educational textbooks.  As the "shadow library" moniker suggests, Libgen operates very differently from legitimate libraries, which, unlike Defendants, acquire works through channels that acknowledge and compensate the efforts of publishers and authors.  Plaintiffs brought this action to stop the cycle of Defendants' mass infringement, which has been occurring for years.

Recognizing the illegal nature of their conduct, Defendants operate Libgen using multiple

domains, including those listed in Appendix A to Plaintiffs' Proposed Order ("Libgen Sites" or "Sites"). Defendants intentionally hide their identities to avoid the obvious consequences of their actions, including by using pseudonyms, relying on proxy services that conceal website operators' identifying information, and failing to provide names or business addresses as contact information on the Sites. Further, from their undisclosed, abroad location, Defendants rely on intermediaries to run Libgen, such as domain registrars, proxy service providers, and Interplanetary File Sharing ("IPFS") gateway companies to facilitate "faster" and "safter" downloads of the infringing files.

Despite having been properly served with the Complaint and Summons pursuant to the Memo Endorsement granting Plaintiffs' Motion to Serve Defendants by Email (ECF No. 17), Defendants have chosen to ignore this suit and the Court's authority. In light of Plaintiffs' uncontested allegations and Defendants' default, Plaintiffs respectfully request that the Court enter an order: (1) finding that Defendants are liable for willful copyright infringement; (2) awarding Plaintiffs maximum statutory damages per copyrighted work identified in Exhibit A to the Complaint; (3) permanently enjoining the further infringement of Plaintiffs' copyrights as set forth in Plaintiffs' Proposed Order; and (4) granting the additional post-judgment relief set forth in Plaintiffs' Proposed Order.

### STATEMENT OF FACTS

### A.  Plaintiffs' Businesses and Copyrights

Plaintiffs are four leading educational publishers in the United States. Compl. ¶ 20; *see also* Decl. of Jessica Stitt ¶ 3; Decl. of Rachel Comerford ¶ 3; Decl. of Steven Rosenthal ¶ 3; Decl. of LaShonda Morris ¶ 3 (collectively, "Pubs. Decls."). Plaintiffs publish thousands of academic works each year, which serve as the basis for thousands of college courses across the United States. Compl. ¶ 21; Pubs. Decl. ¶ 3. Plaintiffs and their authors, who are experts in their fields, engage in an ongoing creative process to create and publish their valuable academic works. *Id.* Plaintiffs'

textbooks are widely available for sale or rental, including from direct sales channels, third-party distributors, and physical and online bookstores.  Compl. ¶ 20; Pubs. Decl. ¶ 3.  Plaintiffs also invest significant time and money into publishing their works, including in content creation and in the support, marketing, and promotion of their works in the United States.  Compl. ¶ 22; Pubs. Decl. ¶ 3.  Plaintiffs have long histories in the publishing industry and have, through decades of effort, built reputations for publishing works of the highest quality.  *Id.*

Plaintiffs own or are the exclusive licensees of the copyrights in their respective works identified in Exhibit A to the Complaint (the "Authentic Works").  Compl. ¶ 23 & Ex. A; Pubs. Decl. ¶ 4.  The Authentic Works are protected by copyright registrations duly issued by the U.S. Copyright Office.  Compl. ¶ 45; Pubs. Decl. ¶ 4.  Plaintiffs downloaded representative copies of the Authentic Works from the Libgen Sites, all of which are infringing.  Compl. ¶ 23; Pubs. Decl. ¶ 6; Decl. of Dan Seymour (filed with Pls. Mot. to Serve Defs. by Email) ¶ 4 (ECF 15).  On Libgen, Defendants maintain a collection of over 1.7 million textbooks and other non-fiction works, including many textbooks and other resources published by Plaintiffs beyond those that Plaintiffs downloaded.  Compl. ¶ 23; Decl. of Kevin Lindsey ("Atty. Decl.") ¶ 4.  Accordingly, Exhibit A is merely representative of Defendants' overall infringements.  Compl. ¶ 23; Pubs. Decls. ¶ 4.

## B.       <u>**Defendants' Willful Infringement**</u>

Libgen is universally recognized as one of the world's most egregious piracy operations.  Compl. ¶¶ 1, 38, 39; Atty. Decl. ¶ 4, ¶ 15 & Ex. 1 at 27 (stating that Libgen has been included in the Office of the U.S. Trade Representative's *Review of Notorious Markets for Counterfeiting and Piracy* for years, and attaching the 2023 version ("USTR Report").  Its enormous collection of infringing works, which consists of digital files from a diverse cross-section of the publishing industry, is accessible to anyone with an internet connection, including users in the United States.  Compl. ¶ 6; Atty. Decl. ¶¶ 4, 8.  For Plaintiffs alone, Libgen has over 20,000 files identified as

Plaintiffs' works—none of which Plaintiffs authorized Defendants to include in the Libgen collection or exploit in any way.  Compl. ¶ 6; Atty. Decl. ¶ 4; Pubs. Decls. ¶ 5.  Through the Sites, Defendants have reproduced and distributed an untold number of infringing digital copies of Plaintiffs' works to the public.  Compl. ¶ 25; Pubs. Decls. ¶ 5.

To facilitate their infringement, Defendants designed the Sites to be both user-friendly and to avoid enforcement.  Compl. ¶¶ 26-30; Atty. Decl. ¶ 7.  The Sites allow users to easily search for infringing textbooks using fields such as title, author, publisher, and ISBN.  Compl. ¶ 26; Atty. Decl. ¶ 7.  Recognizing the illegal nature of their venture, Defendants have developed redundancies to make the Sites resistant to enforcement efforts.  Compl. ¶¶ 4, 28-30; Atty. Decl. ¶ 6-7.  In addition to operating from multiple, ever-changing domains, Defendants provide multiple means of downloading infringing works from the Sites, including from a Libgen server, through IPFS networks, and through peer-to-peer networks notorious for widespread, unauthorized distribution of copyrighted materials.  Compl. ¶¶ 4-5, 28; Atty. Decl. ¶ 5.

Since filing the Complaint, Plaintiffs have identified several additional domains Defendants use to operate Libgen, which are listed in Appendix A to the Proposed Order and included among "the Sites."  Atty. Decl. ¶ 6.  These recently identified Sites provide the same means to download infringing works as the Sites listed in the Complaint, including the same Libgen server and the same IPFS gateways.  *Id.*  They also distribute the same or largely the same collection of infringing works.  *Id.*  Additionally, libgen.re has the same homepage as and links to libgen.rs, libgen.is, and libgen.st; and libgen.vg and libgen.click have the same homepage as and link to libgen.lc, libgen.li, libgen.gs, and libgen.pm.  *Id.*

The current Libgen IPFS gateways are provided by three U.S. companies—Protocol Labs Inc. (which operates IPFS.io), Pinata Technologies, Inc., and Cloudflare, Inc.  Compl. ¶ 29; Atty.

Decl. ¶ 5.  Clicking a link to download an infringing work through the IPFS network directs a user's browser to a gateway operator URL that acts as a relay point between the user and the IPFS network.  *Id.*  On August 28, 2023, Plaintiffs sent notices of infringement to Protocol Labs, Pinata, and Cloudflare.  Declaration of Michael Candore ("Candore Decl.") ¶ 4.  In response, Protocol Labs and Pinata disabled thousands of gateway URLs.  *Id.*  Cloudflare did not disable the gateway URLs in Plaintiffs' notice, prompting Plaintiffs to send additional notices in September 2023 and January 2024, on which Cloudflare still has not acted, resulting in Libgen users' continued ability to access the infringing URLs.  *Id.*

Defendants' identities are unknown because they infringe behind closed doors, taking affirmative steps to conceal their identities.  Compl. ¶¶ 3, 37; Seymour Decl. ¶ 6; Atty. Decl. ¶ 10.  However, it is apparent that Defendants operate Libgen from abroad.  Compl. ¶¶ 3, 15, 37; Seymour Decl. ¶ 5.  For instance:  (1) when Plaintiffs downloaded infringing copies of the Authentic Works, the IP address of the Libgen server was located in Ukraine; (2) most Sites are available in Russian in addition to English; (3) information from message boards and social media posts associated with the Sites demonstrate that Defendants are located abroad; and (4) Defendants rely on a number of foreign intermediaries, such as web hosts and domain registrars based in, for example, the Netherlands, Finland, and Ecuador.  Seymour Decl. ¶ 5; Atty. Decl. ¶ 11.

Notwithstanding, the Sites have a significant U.S. footprint.  For instance, the Sites target and are continuously accessible to U.S. users and consistently receive millions of U.S. visitors per month (which is a significant percentage of all visitors).  Compl. ¶¶ 17, 32 (over a 3-month period in 2023, the Sites averaged about 9 million U.S. visitors per month); Atty. Decl. ¶ 8.  Additionally, some of the Sites include advertisements in English promoting U.S. products, such as browser extensions and online games, and solicit donations in English.  Compl. ¶¶ 33-34; Atty. Decl. ¶ 8.

Defendants also rely on certain U.S. intermediaries to conduct their unlawful operations, including, in addition to the IPFS gateways, NameCheap for domain registration, Cloudflare for proxy services, and Google for search engine services.  Compl. ¶ 31; Atty. Decl. ¶ 9.

The very nature of Libgen's operations show that Defendants have full knowledge that their conduct violates copyright law.  Compl. ¶ 36; Atty. Decl. Ex. 6.  For instance, Defendants designed the Sites to resist enforcement, actively hide their identities, know that Plaintiffs have never granted them any license to copy or distribute Plaintiffs' works, and fail to act on notices of infringement.  Compl. ¶¶ 3, 26-30, 36-37; Pubs. Decl. ¶ 7; Atty. Decl. ¶ 10.  Libgen staff has also publicly spoken about the "the threat posed by U.S. authorities to pirate/shadow libraries and their enthusiasts."  Compl. ¶ 36; Atty. Decl. Ex 6.  This is likely a reference to the 2022 federal indictment of two Russian nationals who operate another shadow library, "Z-Library," which also provides infringing copies of Plaintiffs and other publishers' copyrighted works.[1]

Additionally, in an action by another educational publisher in this District, the court found Libgen and its anonymous operators (as well as a journal-focused shadow library, "Sci-Hub") liable for willful copyright infringement, entering a default judgment and permanent injunction against them.  *See Elsevier Inc. v. Sci-Hub,* No. 15-CV-4282 (RWS), 2017 WL 3868800 (S.D.N.Y. June 21, 2017).  Further, courts in Belgium, France, Germany, Greece, Italy, and the United Kingdom have ordered internet service providers to block access to Libgen Sites as a result of infringement actions.  Compl. ¶ 39; USTR Report at 27 (Atty. Decl. ¶ 15 & Ex. 1); Atty. Decl. ¶ 22 & Ex. 8 (citing sources concerning site blocking).  Yet Defendants are still operating Libgen today.

---

[1] *See* U.S. Atty's Office (E.D.N.Y.), Press Release (Nov. 16, 2022), https://www.justice.gov/usao-edny/pr/two-russian-nationals-charged-running-massive-e-book-piracy-website#:~:text=Earlier%20today%2C%20in%20federal%20court,online%20e%2Dbook%20piracy%20website.  The defendants were arrested in Argentina at the United States' request.  *Id.*

### C.    Defendants Cause Substantial Injury to Plaintiffs

Plaintiffs have to invest substantial resources to combat online piracy of their works, which is rampant, and Defendants are among the worst offenders.   Compl. ¶ 40; Pubs. Decls. ¶ 8. Defendants compete directly with Plaintiffs by distributing infringing copies of their works for free, displacing legitimate sales.   Compl. ¶ 41; Pubs. Decls. ¶ 8.   When a consumer obtains Plaintiffs' works from the Libgen Sites instead of through legitimate channels, no remuneration is provided to Plaintiffs or their authors for the substantial investments they have made to create and publish the works.  *Id.*   Moreover, through social media, students are bombarded with messages to use Libgen instead of paying for legal copies of textbooks, and all too many do so.  *Id.*

Defendants' unlawful conduct also devalues the textbook market.   Compl. ¶ 42; Pubs. Decls. ¶ 9.   When consumers can acquire textbooks for free, they are less likely to be willing to pay fair value for them and more likely to be unaware or unappreciative of the substantial time and money invested in producing them.  *Id.*   Moreover, a substantial decline in revenue from sales could cause Plaintiffs to cease publishing one or more deserving works, adversely impacting the creation of new works and the availability of educational content.  Compl. ¶ 43; Pubs. Decls. ¶ 9.

### D.    Procedural History

Plaintiffs filed the Complaint on September 14, 2023 (ECF No. 1).   Given Defendants' undisclosed identities and location, Plaintiffs filed a motion to serve Defendants by email, which the Court granted on October 10, 2023 (ECF No. 17), and Plaintiffs have not been able to determine Defendants' true identities.  Atty. Decl. ¶ 10.  Plaintiffs successfully served Defendants with the Complaint and Summons by email on October 17, 2023 (Decl. of Service, ECF No. 20).  Because Defendants did not respond to the Complaint or otherwise defend in this case, Plaintiffs sought, and the Clerk issued, a Certificate of Default pursuant to Federal Rule of Civil Procedure 55(a) as to all Defendants on November 21, 2023 (ECF No. 23).

## ARGUMENT

### A.     The Court Should Enter Judgment for Plaintiffs Based on the Well-Pleaded Allegations in the Complaint.

The Court should grant a default judgment in Plaintiffs' favor under Rule 55(b)(2), as Defendants were properly served with the Complaint and Summons but failed to file an Answer or otherwise appear or defend in this action.  *See* Fed. R. Civ. P. 55(b)(2); *Cablevision Sys. New York City Corp. v. Leath*, No. 01 Civ. 9515 (LTS), 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002).  By their default, Defendants have admitted all "well-pleaded allegations" in the Complaint. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.")  (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992)); *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 221 (S.D.N.Y. 2002) (following entry of default, "all of the facts alleged in Plaintiff's complaint are, as a matter of law, deemed admitted"); Fed. R. Civ. P. 8(b)(6) (allegations admitted if not denied except those "relating to the amount of damages").  Courts in this District routinely enter default judgments against Doe defendants.  *See, e.g.*, Google LLC v. Starovikov, No. 21CV10260 (DLC), 2022 WL 4592899, *4 (S.D.N.Y. Sept. 30, 2022) ("Final judgment against the Doe Defendants is appropriate" due to doe defendants' default); *Moncler S.P.A. v. John Does 1-16*, 19-cv-8848-PGG (S.D.N.Y. July 30, 2020) (Atty. Decl. Ex. 5) (entering default judgment and permanent injunction against Doe defendants).

### B.     The Court Has Personal Jurisdiction Over Defendants.

The Court has specific personal jurisdiction over Defendants under Rule 4(k)(2), which provides that a federal court may exercise jurisdiction over a foreign defendant if the defendant is served with the summons and: (1) the claim arises under federal law; (2) the defendant is not

subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction comports with due process.  Fed. R. Civ. P. 4(k)(2).  Under this rule, "a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole." *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003).

Plaintiffs' infringement claims here arise under the Copyright Act of 1976, a federal law. Compl. ¶ 46.  Through their default, Defendants admitted that they operate Libgen from foreign locations.  *Id*. ¶¶ 17, 37.  Further, through their counsel, Plaintiffs certify that, based on information currently available, Defendants are not subject to suit in courts of general jurisdiction in any state. Atty. Decl. ¶ 11; *see Przewozman v. Charity*, No. 20-cv-6088 (NGG) (TAM), 2023 WL 2562537, *14 (E.D.N.Y. Mar. 17, 2023) (after plaintiffs certify that defendant not subject to general jurisdiction in any state, burden shifts to defendant to show that it is); *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, No. 16-cv-5883 (JGK) (RWL), 2018 WL 3639929, at *13 (S.D.N.Y. July 10, 2018), *report and recommendation adopted,* No. 16 Civ. 5883 (JGK), 2018 WL 3632524 (S.D.N.Y. July 31, 2018) (plaintiff certified through attorney declaration that, based on known information, defendant was not subject to jurisdiction in any state).

Exercising jurisdiction under Rule 4(k)(2) also satisfies due process.  Operating an interactive website that "continuously and deliberately target[s]" U.S. users, is visited by a substantial number of U.S. users, and generates advertising revenue, as Defendants concede here, establishes the requisite U.S. contacts.  *See Freeplay Music*, 2018 WL 3639929, at *15; *see also Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018) (foreign website provided minimum contacts with U.S. where it served, and defendant made no effort to block, U.S. users); Compl. ¶¶ 17, 37; Atty. Decl. ¶ 8.  Defendants also rely on the works of U.S. copyright holders, including Plaintiffs, rely on U.S. companies as intermediaries, purport to identify a "copyright

agent" under 17 U.S.C. § 512, and target ads and solicitations at U.S. users.  Compl. ¶¶ 17, 37; Atty. Decl. ¶ 8.  Thus, these contacts are substantially greater than in *Bersoum v. Aboteat*, where "the actions complained of all took place on foreign soil, and had no impact on anyone or anything in the United States."  568 F. Supp. 3d 443, 458 (S.D.N.Y. 2021) (J. McMahon).

The exercise of personal jurisdiction over Defendants also satisfies the factors for reasonableness to determine if a foreign entity may be subject to personal jurisdiction:  (1) the burden on the foreign entity; (2) the interests of the forum nation in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of nations in furthering substantive social policies.  *See Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (citations omitted).  First, due to their default, Defendants cannot claim that they have been burdened.  Second, the United States "has a substantial interest in enforcing its citizens' intellectual property rights."  *Freeplay Music*, 2018 WL 3639929, at *16 (citing *Gucci*, 135 F. Supp. 3d at 100)).  Third, given Defendants' unknown locations abroad, seeking relief in a foreign jurisdiction is impracticable.  Fourth, this case is now at the default judgment stage and will be most efficiently concluded in this Court.  Finally, a majority of nations have a shared, documented interest in protecting intellectual property rights.  *See generally* Berne Convention for the Protection of Literary and Artistic Works, *adopted* Sept. 9, 1886, 1161 U.N.T.S. 3 (revised at Paris July 24, 1971, and amended on Sept. 28, 1979).  Accordingly, exercising personal jurisdiction over Defendants under Rule 4(k)(2) comports with due process.

Alternatively, the Court has specific personal jurisdiction over Defendants.  Defendants maintain interactive web sites that permit the exchange of information between New York users and Defendants to execute their massive infringement scheme, establishing specific personal

jurisdiction under N.Y. C.P.L.R. § 302(a)(1).  The Sites distribute infringing works to Plaintiffs

and others in New York via the Sites, which are interactive in that they distribute files via download

to customers, solicit donations from users, allow users to upload files, and allow users to

communicate with Defendants through an online forum.  *See* Comp. ¶¶ 18, 26-30, 33-35; Atty.

Decl. ¶ 8; *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (exercising

personal jurisdiction over out-of-state defendant whose website "involves more than the passive

posting of information about [defendant's] loan products and services").

     As the application of New York's long-arm statute meets due process requirements, a

separate due process analysis is unnecessary.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95,

105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied

because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").  Nonetheless,

the requisite minimum contacts are satisfied, and exercising personal jurisdiction in this case does

not offend traditional notions of fair play and substantial justice, where, among other things,

Defendants distributed infringing works via the Sites to New York users.

### C.    Defendants Are Liable for Willful Copyright Infringement.

     To prevail on a case of direct copyright infringement, a plaintiff must show that: (1) it is

the legal or beneficial owner of a valid copyright; and (2) the defendant violated one or more of

the plaintiff's exclusive rights set forth in the Copyright Act.  *See Feist Publ'ns, Inc. v. Rural Tel.*

*Serv. Co.*, 499 U.S. 340, 361 (1991); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F.

Supp. 3d 606, 621-24 (S.D.N.Y. 2018); 17 U.S.C. §§ 501(a)-(b).  Plaintiffs are the owners or

exclusive licensees of the copyrights in their respective Authentic Works, which have never been

assigned, licensed, or otherwise transferred to any Defendant.  Compl. ¶¶ 23-24, 45 & Ex. A; Pubs.

Decls. ¶ 4; Atty. Decl. ¶ 14.  The Authentic Works are original works of authorship that are

protected by registrations with the U.S. Copyright Office.  *Id*.  Registration alone is *prima facie*

evidence that the plaintiff owns valid copyrights for the works at issue.  17 U.S.C. § 410(c).  Thus, by Plaintiffs' Complaint and declarations, and Defendants' default, the ownership element of Plaintiffs' copyright infringement claims is established.  *See Bass v. Diversity Inc. Media*, No. 19-cv-2261-AJN, 2020 WL 2765093, at *2 (S.D.N.Y. May 28, 2020) (copyright registration numbers satisfy this prong for a default judgment); Compl. Ex. A.

Plaintiffs have also alleged and demonstrated that Defendants, with knowledge that their conduct was unlawful and in violation of Plaintiffs' copyrights, have willfully infringed Plaintiffs' exclusive rights under the Copyright Act by copying and distributing infringing copies of the Authentic Works (among many other works).  *See, e.g.,* Compl. ¶¶ 36-39; Pubs. Decls. ¶¶ 5-7; Atty. Decl. ¶¶ 12-13 & Ex. 6; *see also* 17 U.S.C. §§ 106 (1), (3).

Willful copyright infringement, which supports enhanced damages, can be based on actual or constructive knowledge.  *See Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1364 (S.D.N.Y. 1991) ("in order to prove willfulness, a plaintiff must show that the defendant knew or should have known that its conduct constituted copyright infringement"); 17 U.S.C. § 504(c)(2).  Through their default, Defendants have admitted Plaintiffs' allegations of willfulness.  *See Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("by virtue of its default, [defendant] has admitted [plaintiff's] allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiffs'] right").  Moreover, Defendants' knowledge that their activities are infringing is clear from the egregious nature of the Sites and their own public statements.  *See* Compl. ¶¶ 1-7, 25-29, 36; Atty. Decl. ¶ 20.  And Defendants continue to operate the Sites in contravention of a judgment finding them liable for willful copyright infringement.  *Elsevier Inc.,* 2017 WL 3868800, at *1.  Indeed, the very purpose

of Defendants' piratical operation is to distribute copyrighted materials that they do not own, for free, at the expense of copyright owners.  Compl. ¶¶ 7-8.

     **D.**    **The Court Should Award Plaintiffs Maximum Statutory Damages.**

     After liability is established against a defaulting defendant, the court conducts an inquiry to ensure there is a basis for the requested damages.  *See Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189-90 (E.D.N.Y. 2009).  The Copyright Act provides several types of relief, including statutory damages under 17 U.S.C. § 504 (a)-(c), which are particularly appropriate in default cases where the defendant has not participated in the litigation, making other methods of assessing damages impossible.  *See Schwartz-Liebman Textiles, a Div. of Cranstron Print Works Co. v. Last Exit Corp.*, 815 F. Supp. 106, 108 (S.D.N.Y. 1992) ("A key reason for the alternative statutory damage provision is so that a copyright owner will not be prevented from a recovery simply because actual amounts may not be ascertainable . . . .") (citations omitted).

     Accordingly, Plaintiffs elect to seek statutory damages in this case.  Statutory damages may serve as both compensatory and punitive relief for a plaintiff who has been harmed by a willful infringer, and as a deterrent against future infringement.  *See John Wiley & Sons,* 327 F. Supp. 3d at 633-35; *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999); *Lauratex Textile Corp. v. Allton Knitting Mills,* 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (statutory damages can exceed actual damages because they "serve[] the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers") (citing *Lottie Joplin Thomas Tr. v. Crown Publishers, Inc.*, 592 F.2d 651 (2d Cir. 1978)).

     The Copyright Act provides for statutory damages in an amount "the court considers just," within the statutory parameters, including up to $150,000 per copyright infringed in the case of willful infringement.  17 U.S.C. § 504(c)(1)-(2).  Here, Plaintiffs seek $30,000,000 in statutory damages for Defendants' willful copyright infringement, based on damages of $150,000 per work

13

multiplied by the 200 Authentic Works identified in the Complaint, as further described in Appendix B to the Proposed Order.  *See* App. B to Proposed Order; Compl. ¶ 45; Atty. Decl. ¶ 14; 17 U.S.C. § 412(2) (statutory damages available for works registered within three months of publication or prior to the infringement complained of; here, prior to listing on Libgen). Plaintiffs seek this award against Defendants jointly and severally based on their operation of the Sites, which share commonalities, including using the same server and IPFS gateways for infringing downloads and offering the same or substantially the same collection of infringing works through each Site.  *See* Compl. ¶¶ 1, 4, 23, 29; Atty. Decl. ¶¶ 5-6; 17 U.S.C. § 504(c)(1).

This damages award is a fraction of what it could be if this case were litigated and the full scope of Defendants' infringement revealed.  The Libgen Sites show that thousands of infringing copies of Plaintiffs' works beyond the Authentic Works are available for download.  Compl. ¶¶ 6, 23; Atty. Decl. ¶ 4.  Thus, Plaintiffs seek damages on only a small subset of all their copyrighted works available through Libgen, making their request all the more reasonable.

Indeed, in *Elsevier v. Sci-Hub*, Judge Sweet awarded maximum statutory damages against Libgen and Sci-Hub.  *See* 2017 WL 3868800, at *2.  Similarly, in an action by the American Chemical Society against Sci-Hub, the court also awarded maximum statutory damages.  *See Am. Chem. Society v. John Does 1-99*, No. 17-cv-726-LMB-JFA, Order at 3 (E.D. Va. November 3, 2017) (Atty. Decl. Ex. 2).  These rulings are consistent with multiple comparable cases where courts have awarded maximum statutory damages against defaulting defendants in infringement cases.  *See, e.g., Bedford, Freeman & Worth Publishing Group, LLC* v. *English*, 21-cv-6691-ER, at 6 (S.D.N.Y. November 10, 2022) (Atty. Decl. Ex. 3) (awarding Plaintiffs maximum copyright and trademark statutory damages against defendants who operated infringing websites); *Elsevier Inc. v. Quattainah,* No. 20-cv-8438-LLS, at 7-8 (S.D.N.Y. June 28, 2022) (Atty. Decl. Ex. 4)

14

(same); *Bedford, Freeman & Worth Publishing Group, LLC* v. *Nguyen*, 19-cv-10524-LAK, 2021 WL 4803625, *3 (S.D.N.Y. October 14, 2021) (same for copyright damages).

Moreover, in determining an appropriate damages award under the Copyright Act, "courts look to considerations such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Union of Orthodox Jewish Congregation of Am. V. Royal Food Distributors Liab. Co.*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009). All of these factors weigh in favor of Plaintiffs.

First, when a defendant defaults and prevents a plaintiff from determining the defendant's actual profits, every reasonable inference is resolved in the plaintiff's favor. *See Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, No. 06 Civ. 7827 HB (GWG), 2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008). Here, Defendants have defaulted, thus preventing Plaintiffs from discovering information regarding the finances behind Libgen, which Defendants have been operating for years. Notwithstanding, Defendants have admitted that they profit from the Sites. *See* Compl. ¶¶ 33-34. Although users can download the infringing works for free, Defendants solicit and receive donations and sell ads, which result in profits, especially given the millions of visitors to the Sites. *See* Compl. ¶¶ 33-34; Atty. Decl. ¶ 8. Defendants also do not pay for the rights to distribute the copyrighted works the Sites provide. *See, e.g.,* Compl. ¶¶ 1, 7, 24. Thus, they operate, albeit illegally, with little to no investment required to obtain what they distribute.

Second, Plaintiffs lose revenue from legitimate sales when Defendants distribute copies of their textbooks for free. Compl. ¶ 41; Pubs. Decls. ¶ 8. Plaintiffs sell or rent their textbooks at

prices that reflect the substantial time and effort necessary to produce them and compensate authors through royalty payments.  Compl. ¶¶ 41-42; Pubs. Decls. ¶¶ 8-9.  However, on Libgen, students can download Plaintiffs' textbooks for free, and many do so, displacing legitimate sales.  *Id*.  And more broadly, by devaluing the textbook market, and thus undercutting the perceived value of Plaintiffs' textbooks, Defendants' conduct causes a further loss of revenue.  *Id*.  While Defendants' default makes it impossible for Plaintiffs to calculate their actual lost revenues, including because proper discovery would have provided more information about the full scope of Defendants' infringement, that does not weigh against Plaintiffs here; indeed, statutory damages are designed to address this very situation.  *See Schwartz-Liebman Textiles*, 815 F. Supp. at 108.

Third, Plaintiffs are among the leading higher education publishers in the United States. Compl. ¶ 20; Pubs. Decls. ¶ 3.  They invest heavily in publishing their valuable academic works, and their textbooks are among the most popular in their fields.  Compl. ¶¶ 2, 21; Pubs. Decls. ¶ 3. Plaintiffs have also invested decades of effort in building a reputation of quality in the industry. Compl. ¶ 22; Pubs. Decls. ¶ 3.  Accordingly, the Court "can infer from the well-known reputations for high-quality education content of the plaintiffs that [their copyrights] are indeed valuable." *Elsevier Inc. v. Siew Yee Chew*, No. 17 Civ. 6225 (JGK)(GWG), 2019 WL 74606, at *10 n. 7 (S.D.N.Y. Jan. 2, 2019) (internal citations and quotations omitted) (alteration in original); *see also Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12 Civ. 9190 (GBD)(AJP), 2013 WL 6481354, at *4 (S.D.N.Y. Dec. 3, 2013) (applying this rationale in the trademark context).

Fourth, Defendants' willfulness is clear from the egregious nature of the Sites, which are pirate websites purposely built to disseminate copyrighted works without authorization. Compl. ¶¶ 1-7, 25-29, 36; Pubs. Decls. ¶ 5; Atty. Decl. ¶ 7.  Indeed, Libgen admits as much.  *See, e.g.*, Compl. ¶ 36 (showing a post with links to U.S. copyright law information to demonstrate the

16

"the threat posed by U.S. authorities"); Atty. Decl. Ex. 6.  In addition, Defendants have actively concealed their identities to avoid detection and failed to respond to tens of thousands of infringement notices issued by Plaintiffs.  Compl. ¶ 37; Pubs. Decls. ¶ 7; Seymour Decl. ¶ 6.

Fifth, Defendants have refused to cooperate in this litigation.  Despite having received the Complaint, they have failed to respond or appear.  This lack of cooperation has ensured that the full scale of their infringement and the resulting damage to Plaintiffs will remain unknown.

Sixth, it is critical that the judgment entered in this action discourage Defendants and others from engaging in copyright infringement.  *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (it is appropriate to consider "the deterrent effect on the infringer and third parties" with statutory damages); *Schwartz-Liebman Textiles,* 815 F. Supp. at 108 ("The broad discretionary power given courts to make such an award serves the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers.") (internal citations omitted).  Here, Defendants have built a massive collection of infringing works that they distribute in anonymity, have failed to comply with the prior judgment and injunction against them, and are further subject to blocking orders across Europe.  Comp. ¶¶ 3-6, 38; Atty. Decl. ¶¶ 3-6, 13. Defendants have also developed a dedicated following, including volunteers to help maintain the Sites, donors contributing funds, discussion forums dedicated to how to better pirate copyrighted works, and users who can upload new infringing works that the Sites then make available to the masses.  Compl. ¶¶ 27, 34; Atty. Decl. ¶ 12.  And Defendants are among the worst offenders in a growing online piracy crisis affecting publishers.  Compl. ¶¶ 1, 40; Pubs. Decls. ¶ 8; Atty. Decl. ¶¶ 4, 7, 15 & Ex. 7 (Association of American Publishers' press release noting that online piracy, including Libgen, "costs the U.S. economy $29.2 billion a year").   Thus, a significant damage

award is needed to deter Defendants and others who are engaged in the commission and facilitation of digital piracy.

### E. An Evidentiary Hearing to Determine Statutory Damages Is Not Required.

Plaintiffs' request for an award of statutory damages does not require the Court to conduct an evidentiary hearing. *See Tabak v. Lifedaily, LLC*, No. 21 cv 04291 (LLS), 2021 WL 5235203, at *1 (S.D.N.Y. Nov. 9, 2021). Courts routinely award damages post-default without an evidentiary hearing based on affidavits submitted by the plaintiff. *See, e.g., Rovio Entm't, Ltd. v. Allstar Vending, Inc.,* 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015) (granting plaintiffs' request for statutory damages without holding an inquest hearing and relying "solely on the papers provided by plaintiff"); *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ.9155 JGK AJP, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002) ("Here, of course, the issue is statutory damages, making it even more appropriate to hold the inquest on a paper record."). Plaintiffs submit that they have presented a thorough record in support of their damages claims without the need for a hearing.

### F. The Court Should Issue the Proposed Permanent Injunction.

Given Defendants' egregious conduct, a permanent injunction here is critical. The Copyright Act vests the Court with the power to grant final injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In *Elsevier v. Sci-Hub*, a court in this District has already decided that a permanent injunction against Libgen (and Sci-Hub, also a shadow library) is appropriate. *See* 2017 WL 3868800, at *1-2. The court in *American Chemical Society v. Sci-Hub* reached the same decision. *See* Atty Decl. Ex. 2. Indeed, courts routinely issue permanent injunctions as part of default judgments in counterfeiting and piracy cases. *See, e.g.*, *Coach, Inc. v. Melendez*, No. 10 Civ. 6178 BSJ HBP, 2011 WL 4542971, at *8 (S.D.N.Y. Sept. 2, 2011), *report and recommendation adopted*, No. 10 Civ. 6178 BSJ HBP, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011; *Warner Bros. Entm't Inc. v. RDR Books*,

575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008).   Accordingly, Plaintiffs have obtained permanent injunctions in multiple cases they have brought against operators of websites selling infringing digital copies of their works.  *See, e.g., Bedford, Freeman & Worth Publishing Group,* Atty. Decl. Ex. 3; *Elsevier Inc.,* Atty. Decl. Ex. 4;  *Bedford, Freeman & Worth Publ'g Grp.,* 2021 WL 4803625, at *2-3.

In addition to establishing Defendants' liability for copyright infringement, Plaintiffs have satisfied the equitable factors for issuance of a permanent injunction.  These include a showing that: (1) they have suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 632 (S.D.N.Y. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).

First, Defendants have admitted by their default, and Plaintiffs have affirmatively demonstrated, that Plaintiffs have suffered irreparable harm as a result of Defendants' infringement.  *See TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 Civ. 6215(GBD) (FM), 2012 WL 760168, at *8 (S.D.N.Y. Feb. 23, 2012), *report and recommendation adopted*, 2012 WL 1948816 (S.D.N.Y. May 30, 2012) (granting injunction based in part on defendants' admissions through default).  Indeed, Defendants have caused Plaintiffs harm that is "difficult to measure," "difficult to replace," and that they "should not be expected to suffer."  *See Hounddog Prods.*,  826 F. Supp. 2d at 632 (stating in copyright case that "'[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer'") (quoting *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010)).  For instance, Defendants have reproduced and distributed an indeterminable number

19

of infringing copies of Plaintiffs' works, stealing the fruits of Plaintiffs' and their authors' creative efforts, causing immeasurable lost sales, and devaluing the academic textbook market in which Plaintiffs operate. *See* Compl. ¶¶ 40-43, 50; Pubs. Decls. ¶¶ 8-9. Defendants also distribute illegal copies of Plaintiffs' works in electronic forms that lack security, which allows for their further infringing downstream dissemination. Compl. ¶ 35; Candore Decl. ¶ 3. If Defendants were truly running a "library," they would properly license Plaintiffs' (and other copyright holders') works. Instead, Defendants intentionally do the opposite. They take and then widely disseminate those works, causing Plaintiffs to suffer harms that they should not be expected to suffer.

Second, Plaintiffs have no adequate remedy at law. The harm caused by Defendants cannot be measured, and Plaintiffs cannot be made whole. *See Broad. Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 156 (W.D.N.Y. 2019) ("Monetary damages awarded after the fact do not provide an adequate remedy in a case such as this where the actual loss caused by the infringement cannot be measured precisely.") (internal quotation marks omitted). Moreover, "'[a] plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright(s).'" *Hounddog Prods.*, 826 F. Supp. 2d at 633 (quoting *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832, 2010 WL 3744033, at *4 (JGK)(KNF) (S.D.N.Y. Sept. 27, 2010)). By operating Libgen for years, and doing so in the face of myriad notices of infringement and a judgment against them in *Elsevier* (as well as international judgments), Defendants have shown that they will do what it takes to keep infringing if permitted to do so.

Third, the balance of hardships favors granting a permanent injunction. As shown above, Plaintiffs will suffer irreparable harm without the injunction. Moreover, Defendants have not appeared in this case to argue that the injunction would pose any hardships for them, nor could such hardships exist, since the injunction merely requires compliance with the law. *See Hounddog*

20

*Prods.*, 826 F. Supp. 2d at 633; *Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06cv6403(SLT)(SMG), 2008 WL 2884761, at *5–6 (E.D.N.Y. July 23, 2008) (the injunction "only serves to require defendant to comply with the Copyright and Lanham Acts").

Fourth, the public interest lies in the enforcement of intellectual property rights. *See Microsoft Corp.,* 2008 WL 2884761, at *6. Indeed, the critical need to protect copyrights is reflected in the U.S. Constitution, which instructs Congress "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Const. art 1 § 8, cl. 8. Lost income to piracy could also cause Plaintiffs to cease publishing certain textbooks or thwart the creation of new works, which would diminish the "store of knowledge available to the public." *See* Compl. ¶ 43; Pubs. Decls. ¶ 9; *Hounddog Prods.*, 826 F. Supp. 2d at 633. With infringement, "there is a greater public benefit in securing the integrity of [plaintiff's] copyrights than in allowing [defendant] to make [the] copyrighted material available to the public." *Warner Bros. Entm't, Inc. v. Carsagno*, No. 06 cv 2676NG (RLM), 2007 WL 1655666, at *6 (E.D.N.Y. June 4, 2007) (citation omitted).

In sum, all of the factors weigh in favor of a permanent injunction prohibiting the infringement of Plaintiffs' copyrights. Further, the injunction should extend to Plaintiffs' copyrighted works both in existence now and created in the future. *See id.* at *5 ("courts may grant injunctions not only for future infringements of the works at issue, but also against future works, which may not now be copyrighted or even in existence") (internal quotations and citations omitted); *see also Bedford, Freeman & Worth Publ'g Grp., LLC*, 2021 WL 4803625 at *3 (enjoining infringement of Plaintiffs' and their affiliates' copyrights "whether now in existence or later created"). Moreover, particularly in light of the multiple and revolving domains at which Libgen has operated to date, and the support system through which Libgen engages in its mass

infringement, the injunction should make clear the various ways in which Defendants or those who are found to be in active concert or participation with them could run afoul of the Order by infringing or, upon notice, aiding and abetting such infringement. *See* Fed. R. Civ. P. 65(d); *Havens v. James*, 76 F.4th 103, 116 (2d Cir. 2023) ("A nonparty acts 'in active concert or participation' if the nonparty aids and abets an enjoined party's violation of the injunction, which requires showing that the challenged action was taken for the benefit of, or to assist, a party subject to the decree in violating it."); *Nike, Inc. v. Wu*, No. 13 Civ. 8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021) (J. McMahon) (nonparties aid and abet enjoined parties if they "'provide[] substantial assistance to advance the [underlying tort's] commission'") (quoting *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012)); *Arista Recs., LLC v. Tkach*, 122 F. Supp. 3d 32, 38 (S.D.N.Y. 2015) (injunction against operators of infringing websites applied to nonparty internet service provider that aided and abetted website operators by "improv[ing] the performance" of infringing websites).

Indeed, such provisions are routinely included in injunctions involving pirate websites to ensure that the injunction is clear to Defendants and those who might be found to aid and abet any ongoing infringement in the internet context. *See, e.g., Elsevier Inc.,* No. 20-cv-8438-LLS, Am. Def. J. and Perm. Inj. (S.D.N.Y. June 28, 2022) (Ex. 4 to Atty. Decl.) (enjoining defendants and those in active concert or participation with them from, *inter alia*, "[u]sing, hosting, operating, maintaining, creating, or registering any computer server, website, domain name, domain name server, cloud storage, e-commerce platform, online advertising service, search engine, social media platform, payment processing, or financial service to infringe or to enable, facilitate, permit, assist, solicit, encourage, or induce the infringement of" plaintiffs' copyrighted works); *see also Bedford, Freeman & Worth Publ'g Group,* LLC, No. 21-cv-6691-ER (S.D.N.Y. November 10,

2022) (Atty. Decl. Ex. 3) (similar order); *Bedford, Freeman & Worth Publ'g Grp., LLC*, 2021 WL

4803625, at *3 (similar order); *Am. Chem. Society v. John Does 1-99*, No. 17-cv-726-LMB-JFA,

Am. Permanent Inj. (E.D. Va. March 28, 2018) (Atty. Decl. Ex. 2) (permanently enjoining Sci-

Hub shadow library operators and those in active concert or participation with them from engaging

in a variety of specified activities and ordering that "any Internet search engines, web hosting and

Internet service providers, domain name registrars, domain name registries, and other service or

software providers, cease facilitating access to any and all domain names, websites, and services

through which Defendant Sci-Hub engages in unlawful access to, use, reproduction, and

distribution of . . . ACS's Copyrighted Works . . . , as well as browser extensions and other services

and tools used to provide direct access to [such] domain names and websites").

### G.     The Libgen Domain Names Should Be Turned Over to Plaintiffs.

Given Defendants' conduct, the Court should order the transfer of the Libgen Site domain

names to Plaintiffs via the applicable registrars or registries.  *See* App. C to Proposed Order (list

of currently known Libgen Sites and their domain registrars).  "[C]ourts have found that a transfer

of domain names is an appropriate remedy to prevent further infringement of a copyright holder's

rights."  *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500 (S.D.N.Y.

2018) (citing *Paramount Pictures Corp. v. Does*, No. 15 Civ. 5819, 2015 WL 10013786, at *4

(S.D.N.Y. Nov. 24, 2015)).  Courts enter such orders on multiple grounds, including Rule 65(d),

17 U.S.C. 502(a) of the Copyright Act, and the court's inherent equitable powers and/or powers to

coerce compliance with its lawful orders.  *See, e.g., Bedford, Freeman & Worth Publ'g,* 2021 WL

4803625 at *3; *TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-cv-1489 (DLI)(PK), 2018 WL

7076022, at *8 (E.D.N.Y. Mar. 9, 2018); *Paramount*, 2015 WL 10013786, at *4.  Indeed, Judge

Sweet ordered a domain transfer provision as to both Libgen and Sci-Hub.  *Elsevier Inc.,* 2017

WL 3868800, at *2.

The Libgen domain names at issue here are part and parcel of Defendants' ongoing infringing operation.  Not only are Defendants operating Libgen in violation of the *Elsevier* order, but when their prior domain names were transferred to Elsevier thereunder, they simply switched domains and continued to infringe.  Compl. ¶ 38; Atty. Decl. ¶ 13.  And given Defendants' proven repeat infringement, there is no concern like in *Cengage Learning, Inc. v. Nguyen*, No. 120 Civ. 00769 (JGK)(SDA), 2021 WL 9908537 (S.D.N.Y. June 1, 2021), *report and recommendation adopted,* No. 20 Civ. 769 (JGK), 2021 WL 2534001 (S.D.N.Y. June 21, 2021), where the court entered a permanent injunction against infringing websites but postponed a decision on domain transfers until it was later determined whether the websites would continue to be infringing.  In contrast, Defendants have already shown that they will continue to infringe despite a current injunction in this District if permitted to do so.  Moreover, Libgen is a well-known, notorious piracy operation that has been infringing for years.  Compl. ¶¶ 6, 39; Atty. Decl. ¶¶ 4, 15 (discussing USTR Report attached as Ex. 1).  Given Defendants' track record, they cannot be relied upon to stop operating the Sites or effectuate the transfer, and the Court can take this into account.

Plaintiffs' Proposed Order includes a provision requiring that, after receiving notice of the Order, registrars or registries of the active Libgen domains names transfer ownership to Plaintiffs (or implement other technical measures to ensure the domain names cannot be used by Defendants to operate Libgen).  And because Defendants have already established new domains to avoid Judge Sweet's order, the Proposed Order further provides that the registrars and registries have the authority to transfer to Plaintiffs new domains used by Libgen to infringe.  Many courts take this one step further and require the registrars and registries to transfer future infringing domain names to plaintiffs.  *See, e.g., Elsevier Inc.,* No. 20-cv-8438-LLS, Am. Def. J. and Perm. Inj. at 9-10 (S.D.N.Y. June 28, 2022) (Atty. Decl. Ex. 4) (directing domain name registries and/or registrars

to transfer domain names for existing and new infringing websites to plaintiffs); *Bedford, Freeman & Worth Publ'g Group, LLC*, 21-cv-6691-ER, Def. J. and Perm. Inj. at 8-9 (Atty. Decl. Ex. 3) (same); *Mattel, Inc. v. www.happy-toys.shop*, No. 21-CV-06650 (VSB), 2022 WL 814310, at *3 (S.D.N.Y. Mar. 17, 2022) ("in order to give practical effect to the permanent injunction," ordering the transfer of defendants' known domains and any new or additional domains associated with defendants to plaintiff); *Am. Chemical Society,* No. 17-cv-726-LMB-JFA, Order at 3 (Atty. Decl. Ex. 2) (addressing Sci-Hub domain names "now or hereafter used by" the defendant); *Tory Burch LLC v. Yong Sheng Int'l Trade Co*., Ltd, No. CV10CIV9336DAB, 2011 WL 13042618 (S.D.N.Y. May 13, 2011) (including domain name transfer provision that extends to "Newly–Detected Web Sites").  However, to balance concerns regarding future conduct involving third parties, Plaintiffs' Proposed Order provides registrars and registries with the authority to effectuate the transfer of future Libgen domains to Plaintiffs, with further amendment of the Order as a possibility if needed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and enter the Proposed Order.


Dated:  March 1, 2024                         Respectfully submitted,

                                              */s/ Kevin Lindsey*
                                              Kevin Lindsey (*pro hac vice*)
                                              Matthew J. Oppenheim
                                              OPPENHEIM + ZEBRAK, LLP
                                              4530 Wisconsin Avenue NW, 5th Floor
                                              Washington, DC 20016
                                              Tel:  (202) 480-2999
                                              matt@oandzlaw.com
                                              klindsey@oandzlaw.com

                                              *Attorneys for Plaintiffs*